UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------x
HARRY WILSON,

                    :

           Plaintiff,        REPORT & RECOMMENDATION

                    :

      -against-         06 Civ. 7777 (LAK)(MHD)

                    :

CITY OF NEW YORK et al.,

                    :

         Defendants.

----------------------------x

TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:

    Plaintiff Harry Wilson filed this lawsuit in 2006, while a
prisoner at the New York City Department of Correction's ("DOC")
Anna M. Kross Center ("AMKC") facility on Rikers Island. He and a
number of fellow prisoners complained in parallel lawsuits that
various practices at AMKC and other Rikers facilities interfered
with their First Amendment right to the free exercise of their
religion. The focus of his and the other prisoners' complaints was
on food handling and distribution, which they contended violated
the pertinent requirements of their Islamic faith, known
collectively as Halal.

    At the conclusion of discovery, defendants have moved for
summary judgment on a variety of grounds. Plaintiff, now
represented by counsel, has opposed. For the reasons that follow,

we recommend that the motion be granted in part and denied in part.

### Prior Proceedings

Plaintiff filed a pro se complaint on September 28, 2006, naming as defendants seven corrections officers; Brian Riordan, the Warden of the AMKC; Martin Horn, then the Commissioner of Correction; and the City of New York. Among his complaints, he asserted that the prison was selling pork products in the facility commissary without labeling them as such, which resulted in prisoners contaminating the Halal-only trays used in the cafeteria when they placed the pork products on those trays. He went on to allege that the contamination was further aggravated by the facility's practice of washing the Halal-only trays, utensils, and other kitchen equipment together with the comparable non-Halal items. In addition, he asserted that the washing process used soap that contained pork derivatives, additionally violating the Halal rules with which he sought to comply. (Wilson Decl. Ex. A at 3-B).

Plaintiff further pressed a set of contentions to the effect that certain other practices at the jail discriminated against Muslim prisoners. Thus, he alleged that the Muslim prisoners, unlike the prisoner adherents of other faiths, are searched

2

whenever they go to the gym for services or classes. (Id. at 3-G).
He further alleged that Muslim inmates are required to pray in the
gym and without a place of worship for Jumu'ah, Friday
congregational prayer, and suggested that this amounted to unequal
treatment, as compared to the handling of prisoner adherents of
other religions. (Id. at 3-H). He also complained that Muslim
prisoners returning from court are not served meals on disposable
trays or Halal-only trays, and that they are served from carts and
with utensils that are not designated as for Halal food only. (Id.
at 3-G). Finally, he asserted that the chicken served in the
cafeteria was not prepared in accordance with Halal standards
because it was undercooked. (Id. at 3-H).

Defendants moved to dismiss this complaint, as well as the
largely parallel complaints of five other Muslim prisoners.[1] By

---

[1] The motion asserted (1) that the complaints were deficient
under Rule 12(b)(6) because they did not establish that the
plaintiffs had exhausted their Department of Correction ("DOC")
grievance procedures, (2) that the plaintiffs lacked standing to
assert their prison-commissary claims, (3) that the complaints
should be dismissed because they did not adequately allege the
personal participation of the various individual defendants in
any constitutional wrongs, (4) that the individual defendants
were, as a matter of law, immune from liability for the alleged
constitutional torts, and (5) that the commissary claims were
legally inadequate as pled because they did not allege a
violation of the plaintiffs' First Amendment rights. Robinson v.
City of New York, 2008 WL 756101, at *1 (S.D.N.Y. March 5, 2008).

Report and Recommendation dated March 5, 2008, we addressed defendants' motions to dismiss the complaints in this and the five other related cases. <u>Robinson</u>, 2008 WL 756101. Based on our assessment of the pleadings, we recommended, <u>inter alia</u>, that the motions be denied with respect to the pleadings of Mr. Wilson and four other plaintiffs. <u>Id.</u> at *9. Defendants filed objections, but by order dated March 21, 2008, the District Court adopted our recommendations in their entirety. <u>Robinson v. City of New York</u>, 2008 WL 756082, *1 (S.D.N.Y. March 21, 2008).

Discovery in Mr. Wilson's case took place only after counsel appeared for him, and it involved principally or entirely a review of discovery previously obtained by another plaintiff, represented by his own counsel, in the parallel case of <u>Wesley v. City of New York</u>, 05 Cv. 5833 (S.D.N.Y. filed June 23, 2005).[2]

---

[2] In the <u>Wesley</u> case, which involved essentially the same claims as here, defendants moved for summary judgment in 2009, which led to a Report and Recommendation dated March 25, 2010, in which we recommended that summary judgment be granted to the defendants with the exception of the plaintiff's claims under the First Amendment, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and parallel state-law claims premised on the washing of Halal trays, utensils, and other equipment in the same machines as comparable non-Halal items. (Wilson Decl. Ex. C at 58, 63 (hereinafter "Wesley R&R"). We further recommended that these claims be dismissed as against all individual defendants other than Commissioner Horn, Warden Riordan and two other administrative defendants. (<u>Id.</u> at 64-65). Defendants filed objections but, by order dated July 19, 2010, the District Court

4

With the end of discovery in this case, defendants moved for summary judgment. In their motion, they offer a potpourri of arguments that parallel in large measure the arguments that they have made in both the motion to dismiss and the <u>Wesley</u> summary-judgment motion. Indeed, the record to which they point on this motion consists principally of two declarations by prison officials that were first submitted in the <u>Wesley</u> case. (Defs.' Exs. B ("Johnson Decl.") & E ("Haberman Decl.")). First, defendants assert that Wilson's complaints about the commissary and food handling at the dining hall fail to state a claim under either the First Amendment or the RLUIPA,[3] although in this section of their briefing they initially conflate a dismissal motion under Rule 12(b)(6) and a summary-judgment motion. (Defs.' R.56 Mem. 2-18). Second, they assert that the individual defendants are entitled to qualified immunity. (<u>Id.</u> at 19-20). Third, they argue that plaintiff cannot demonstrate that any of the individual defendants

---

adopted these recommendations.

[3] We note that in defendants motion to dismiss, they did not contest the applicability of RLUIPA to this case -- presumably because plaintiff's <u>pro</u> <u>se</u> pleading did not mention the statute -- and the court, accordingly, did not address the issue. <u>See generally</u> <u>Robinson</u>, 2008 WL 756101. In light of defendants' apparent recognition of such a claim, reflected in their current opposition to it, and in deference to plaintiff's prior <u>pro</u> <u>se</u> status at the pleading stage, we regard plaintiff's complaint as having raised a claim under RLUIPA, which the parties now both address in their motion papers.

had any involvement in the alleged violation of his rights. (<u>Id.</u> at 20-22). Fourth, they contend that plaintiff's requests for declaratory and injunctive relief are moot, and, last, they say that Wilson cannot be awarded compensatory damages under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), because he concededly never suffered any physical injury, and also cannot recover punitive damages. (<u>Id.</u> at 22-24).

With respect to those claims challenged by defendants in their summary judgment motion, plaintiff has agreed to narrow his case to the one set of claims preserved for trial in the <u>Wesley</u> case -- that is, the allegations concerning the washing of Halal trays, utensils, and kitchen equipment in the same machines as the non-Halal items. (Pl.'s Mem. 5). Plaintiff also appears to concede that he is not entitled to compensatory, injunctive or declaratory relief, but he seeks nominal damages. (<u>Id.</u> at 5-6). He also does not dispute that individual defendants other than Commissioner Horn and Warden Riordan may be dismissed from the case for non-involvement in the policy decisions that led to the challenged washing practice. (<u>Id.</u> at 16-18). As for those two defendants, he argues that they are not entitled to qualified immunity as a matter of law since the record presents triable issues, and he asserts that the reasoning of the court in denying summary judgment in the

6

Wesley case should govern here as well. (Id. at 19-20). Defendants have not replied.[4]

We note that defendants have failed to address -- here, as in their motion to dismiss -- plaintiff's claims that were not raised in the Wesley case. Specifically, defendants do not address plaintiff's claims concerning the alleged unavailability of Halal-designated trays and utensils for prisoners returning from court; the allegedly disparate treatment of Muslim prisoners, as compared to inmates of other faiths, with respect to searches that are carried out when they return from services and classes; and allegedly disparate treatment in the apparent denial of a proper place for congregational worship. Because defendants have not contested those claims on their current motion, they are preserved for trial.

_____

[4] In the interim since briefing in this case was completed, the Wesley case went to trial, with Wesley appearing pro se. Following a bench trial, the court entered judgment for defendants, a result that is, of course, not binding on Mr. Wilson. Wesley v. City of New York, 2012 WL 3262749, *4 (S.D.N.Y. Aug. 10, 2012). We also note that the court's post-trial findings in Wesley did not directly and specifically address the one issue that had been previously defined as triable, that is, the feasibility of a system for washing Halal kitchen items separately from non-Halal items, an omission that may have been attributable to the manner in which the pro se plaintiff presented his case.

ANALYSIS

A. Summary Judgment Standards

The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Shade v. Hous. Auth, 251 F.3d 307, 314 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986)). It is axiomatic that the responsibility of the court in deciding a summary-judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986); see, e.g., Anderson, 477 U.S. at 255; Howley v. Town of Stratford, 217 F.3d 141, 150-51 (2d Cir. 2000).

8

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the "pleadings, the discovery and disclosure materials on file, and any affidavits" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. Pro. 56(c); see, e.g., Celotex, 477 U.S. at 323; Koch v. Town of Brattleboro, 287 F.3d 162, 165 (2d Cir. 2002). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy its initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. See, e.g., Celotex, 477 U.S. at 322-23, 325; PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

If the movant fails to meet its initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970); Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003). If the moving party carries its initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact on any such challenged element of its claim. See, e.g., Beard v. Banks, 548 U.S. 521, 529 (2006);

9

Celotex, 477 U.S. at 323-24; Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). In doing so, the opposing party may not rest "merely on allegations or denials" of the factual assertions of the movant, Fed. R. Civ. Pro. 56(e); see also, e.g., Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 59-60 (2d Cir. 2004), nor may he rely on its pleadings or on merely conclusory factual allegations. See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). He must also "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005). Rather, he must present specific evidence in support of his contention that there is a genuine dispute as to the material facts. See, e.g., Celotex, 477 U.S. at 324; Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 526 (2d Cir. 1994).

Finally, even if the court does not grant summary judgment co-extensive with the relief sought by the movant, it may provide partial relief. Moreover, that relief may be as limited as a declaration that one or more material facts are "not genuinely in dispute" and that those facts are deemed "established in the case." Fed. R. Civ. P. 56(g).

B. Assessment of Defendants' Motion

As noted, defendants' motion largely, although not entirely, tracks their motion in the Wesley case. We address their arguments in the order in which they are presented. In doing so, we freely rely on our summary-judgment analysis in the Wesley case.

1. Failure to State a First Amendment/RLUIPA Claim

Defendants' initial argument is couched, in their point heading, as if they were seeking dismissal under Rule 12(b)(6). (See Defs.' Mem. 2, 14)("PLAINTIFF HAS FAILED TO STATE A CAUSE OF ACTION UPON WHICH RELIEF MAY BE GRANTED"). If so construed, the motion would plainly be deficient since the complaint, liberally read, specifies a number of potential grounds for asserting claims under the Free Exercise Clause and the RLUIPA, and, in any event, the court has previously upheld the adequacy of this very pleading in the face of a Rule 12(b)(6) motion. Robinson, 2008 WL 756101 at *9; Robinson, 2008 WL 756082 at *1. Upon further examination, however, the body of defendants' first argument plainly rests on their proffer of evidentiary materials and other factual assertions, thus demonstrating that it is properly assessed as an argument for summary judgment.

11

Since plaintiff does not seek to defend those portions of his challenged claims that do not pertain to the washing of trays, utensils, and other kitchen equipment -- namely those dealing with "(i) the components and preparation of Halal meals; and (ii) the non-labeling and sale of non-Halal foods" in the commissary (Pl.'s Mem. 5) -- we recommend that summary judgement be granted to defendants on those claims. Apart from plaintiff's failure to pursue those claims on the current motion, the rationale for granting summary judgment on them is set forth in some detail in the Wesley R&R (see pp. 22-42), familiarity with which we assume.

As for the remaining Free Exercise claim, defendants' challenge to its substantive viability as a First Amendment theory is based on the following propositions: (1) that plaintiff cannot show that the washing practices at AMKC "substantially burden[] his sincerely held religious beliefs," purportedly because he apparently purchased some items from the commissary that contained pork, in violation of his professed religious beliefs (Defs.' Mem. 6; Defs.' Ex. G), and (2) "[l]egitimate penological interests justify the impinging conduct," supposedly because the entire current food program at Rikers has been carefully designed and implemented at great expense and with attention to cost and security concerns, and any measures to modify it would involve huge

12

additional expenditures, at the sacrifice of other corrections programs and the security of the jails on Rikers. (Defs.' Mem. 8-9). Defendants also add that plaintiff has alternative means of expressing his religious beliefs, specifically by opting for a vegetarian diet. (<u>Id.</u> at 12).

Defendants also address the RLUIPA claim, which they recognize imposes a more substantial burden on government than does the Free Exercise Clause. Nonetheless, they argue that the restriction in question does not impose a "substantial burden" on plaintiff's religiously based Halal practices, that the meal program -- as designed -- serves a "compelling governmental interest," and that it involves "the least restrictive means to further that interest." (<u>Id.</u> at 14-18).

These arguments mimic the assertions that defendants pressed when seeking summary judgment in the <u>Wesley</u> case. Moreover, as noted, the factual premises for defendants' arguments -- except for the documentation of some commissary purchases by Mr. Wilson -- are identical to what was presented to the court in the <u>Wesley</u> Rule 56 motion, coming in the specific form of declarations by Paulette Johnson, the Assistant Commissioner of the Nutritional Services Division of DOC, and Robert Haberman, the Food Service

13

Administrator of DOC. Those submissions, which on this motion are simply photocopies of the 2008 Wesley declarations, recount the design of the Rikers food program and the practices undertaken by DOC to ensure that the food that it purchases for the Muslim prisoners at Rikers is consistent with Halal specifications. (Johnson Decl. & Haberman Decl.). According to Assistant Commissioner Johnson, several alternative approaches, notably the purchase of prepared Halal meals, the use of disposable trays, and the construction of new buildings to house entirely separate food preparation activities for Halal meals, would be financially ruinous. (Johnson Decl. ¶¶ 18-38).

For the reasons addressed by us at some length in the Wesley R&R, there are at least triable disputes whether the challenged washing protocol substantially burdens plaintiff's religious beliefs, and defendants do not establish as a matter of law that such a substantial burden is justified under the applicable four-factor test. (Wesley R&R at 42-58). In addition, as for the sincerity of plaintiff's beliefs, the fact that on a few occasions Wilson purchased products from the commissary that contained some pork simply puts into triable dispute whether he is a sincere

14

adherent of the religious practices that he professes to follow.[5]

The record indicates, without meaningful dispute, that the washing of the Halal trays and utensils with the non-Halal equivalents violates a tenet of the Muslim faith as practiced by many Muslim prisoners. See generally Robinson, 2008 WL 756101; see also Rose v. Masiey, 2008 WL 706254, at *3 n. 3 (S.D.N.Y. Mar. 14, 2008); Randolph v. City of New York Dept. of Corr., 2007 WL 2660282, at *15 (S.D.N.Y. Sept. 7, 2007). As we observed in Wesley, if this is so, a trier of fact could find that this violation imposes a substantial burden on the practice of those who adhere to these religious beliefs. As for the sincerity of Wilson's beliefs, the Second Circuit has cautioned that an inquiry into religious sincerity is heavily fact-laden and usually not susceptible to adjudication on summary judgment. See, e.g., Patrick v. LeFevre, 745 F.2d 153, 159-60 (2d Cir. 1984); Pugh v. Goord, 571 F. Supp. 2d 477, 498 (S.D.N.Y. 2008). Moreover, in this case, plaintiff has testified by declaration that he has been a consistent adherent of these faith-based principles (Wilson Decl. ¶¶ 1, 10-13) and,

---

[5] Sincerity is not necessarily determined solely by an individual's rigid adherence to the edicts of his religion. We assume that believers may stray from their chosen path on occasion (or more frequently) and still believe sincerely in the importance of the religious tenets that they espouse.

although it appears that on a few occasions he purchased items in the commissary that contained pork ingredients, he represents that this was done in ignorance of the fact that these items were so contaminated. (Id. at ¶¶ 12-13). The fact that this dispute about sincerity requires a determination as to plaintiff's state of mind during the pertinent period makes it plain that the question is for trial, rather than Rule 56 determination. See Clements v. Nassau Cnty., 835 F.2d 1000, 1005 (2d Cir. 1987) (summary judgment is not appropriate when state of mind is at issue if "solid circumstantial evidence exists to prove plaintiff's case."); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

As for defendants' attempts to justify the asserted burden on plaintiff's professed beliefs, none suffices to compel rejection of his First Amendment claim as a matter of law. The question of the reasonableness of the challenged policy turns on (1) whether it has a connection to a legitimate government interest, (2) whether the plaintiff has an alternative means of meeting the requirements of his religious beliefs, (3) what impact accommodating the plaintiff's beliefs would have on the operation of the jail, and (4) whether there were other alternatives that would have facilitated his exercise of his rights while imposing only a minimal burden on the facility. (Wesley R&R at 50 (citing

16

Salahuddin v. Goord, 467 F.3d 263, 274 (2d Cir. 2006)). Defendants have the burden of proffering evidence supporting their theories of justification, and if they do so, plaintiff must demonstrate a triable dispute as to the proffered factual contentions, or else show their legal inadequacy. See, e.g., Salahuddin, 467 F.3d at 273.

In Wesley, we evaluated the same arguments that defendants make in this motion, and we observed that the alternatives addressed by defendants' declarants -- that is, building a separate facility to house all Halal food preparation, buying Halal meals from a vendor, or using disposable trays -- were sufficiently impractical as to demonstrate that the challenged Rikers policy "has some connection to legitimate governmental objectives." (Wesley R&R at 51-52). As for the balance of the relevant considerations, we found there to be triable disputes, thus precluding summary judgment.

With regard to alternatives for plaintiff to practice his religious beliefs, defendants point out, as they did in Wesley, the possibility of an exclusively vegetarian diet. As in Wesley, however, this assertion fails because (1) there is a triable dispute as to the availability of the vegetarian diet, since

17

plaintiff and a number of other prisoners deny that such a program
was available to them during the relevant period (Wilson Decl. Ex.
B),[6] and (2) even if the plaintiff could have had such a diet, that
would not have addressed the problem of contamination caused by
washing Halal trays, utensils, and kitchen equipment with non-Halal
items. (See Wesley R&R at 53-54).[7]


As for the final two considerations -- the impact on facility
operations and the availability of alternatives that would place a
minimal burden on the facility -- defendants' showing here fails to
dispose of material disputes. (See Wesley R&R at 56-58). As we
observed in Wesley:


> Defendants contend that accommodating plaintiff's
> religious exercise would impose a "prohibitive" burden on
> the jail operations. This argument is premised on
> defendants' assumption that the potential accommodations

---

[6] Plaintiff proffers the same prisoner declarations as Wesley
did in opposing summary judgment in his case.

[7] As we also noted in Wesley, the fact that prisoners were
allowed to attend Muslim prayer services did not answer the need
for an effective alternative since "the relevant question in
evaluating the reasonableness of the burden that has been imposed
on an inmate's right is whether the inmate had alternative
opportunities to exercise the particular right that has been
burdened -- in plaintiff's case, the right to receive meals that
comport with his Muslim religious beliefs." (Id. at 55 (citing
Turner v. Safley, 482 U.S. 78, 90 (1987); Giano v. Senkowski, 54
F.3d 1050, 1056 (2d Cir. 1995)).

are the ones that they discuss -- constructing separate
meal preparation service and dishwashing facilities for
Halal meals, serving Halal meals on disposable trays or
providing pre-packaged Halal meals. However, a factfinder
could conclude that there are other means of addressing
plaintiff's concerns that would be much less costly and
disruptive. For instance, requiring inmates in each
facility to stack their Halal meal trays separately and
then transporting the trays and Halal cooking and serving
equipment to a designated facility to be washed separately
would alleviate plaintiff's concern regarding the contact
between the Halal meal trays and non-Halal food and food
residue during the cleaning process. The fact that
defendants prepared all of the meals for inmates in GMDC
and OBCC at a different facility -- the AMKC kitchen -- and
then transported the food to those facilities during the
relevant period suggests that the Department would be
capable of transporting food-service items between
facilities at a bearable cost. Moreover, since more than
40% of the DOC inmates have received Halal meals during the
past 15 years, devoting at least one set of dishwashing
facilities to the equipment used to prepare and serve Halal
meals would not appear on its face to be an inefficient use
of resources.

(Id. at 56-57). We acknowledge that defendants need not address

"'every conceivable alternative method of accommodating    the

complainant's constitutional complaint'" (id. (quoting Turner, 482

U.S. at 90-91)), but "defendants also cannot establish their

entitlement to judgment as a matter of law by failing realistically

to assess the available means of accommodating plaintiff's

religious exercise, and thereby overstating the costs of doing so."

(Id. at 58). We conclude, just as we did in Wesley, that

    defendants have not justified beyond triable dispute the
    reasonableness of combining the equipment and trays used to

19

> prepare and serve Halal meals together with the materials
> used to prepare and serve general-population meals during
> the dishwashing process, particularly when defendants have
> submitted evidence of the greater lengths to which they
> otherwise go to keep the Halal meal-preparation and service
> items separate.

(Id.). We therefore recommend that Wilson's First Amendment claim, as limited, should be subject to trial.

The same result pertains to Wilson's RLUIPA claim. Defendants' arguments under the statute parallel their assertions in seeking to dispose of the Free Exercise claim. (See Defs.' Mem. 14-18). Since the pertinent statutory analysis largely tracks that under the First Amendment, and since the statute is even more protective of individuals' rights than the Amendment, see, e.g., Jova v. Smith, 582 F.3d 410, 415 (2d Cir. 2009) (noting the need for a "compelling state interest" and the statutory requirement of "least restrictive means"), it follows that the Rule 56 motion should be denied insofar as plaintiff's claim is premised on the joint washing of Halal with non-Halal trays and other food-service materials that come in contact with food. (See Wesley R&R at 59-63).[8]

---

[8] As previously noted, insofar as plaintiff has articulated RLUIPA claims for other food-preparation practices contested in defendants' motion, summary judgment in favor of defendants is appropriate.

2. <u>Qualified Immunity</u>

Defendants next seek to preclude liability for all of the individual defendants based on a qualified-immunity defense. Because plaintiff is pursuing his claims solely against former Commissioner Horn and Warden Riordan, we limit our discussion to those two individuals.

Since the facts and law are, in all material respects, the same here as in the <u>Wesley</u> case, we reject this defense for the same reasons that we set forth in that case. (<u>Wesley</u> R&R at 79-85).[9]

To invoke qualified immunity a public official must demonstrate that "'his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged action.'" <u>Jenkins v. City of New York</u>, 478 F.3d 76, 87 (2d Cir.

---

[9] Defendants actually asserted this immunity defense twice in the <u>Wesley</u> case, first on a Rule 12(b)(6) motion, and then in their summary judgment motion. The defense was rejected on both occasions and thus preserved for trial. (Wesley R&R 79-85; <u>Wesley v. Muhammad</u>, 2008 WL 123812, at *9-*12 (S.D.N.Y. Jan. 10, 2008) (hereinafter "Wesley 12(b)(6) Decision").

2007)(quoting <u>Cerrone v. Brown</u>, 246 F.3d 194, 199 (2d Cir. 2001)).
If "there are triable disputes as to the circumstances that could
dictate whether the defendant could have reasonably believed that
his conduct was lawful, summary judgment based on an immunity
defense must be denied." (<u>Wesley</u> R&R at 81 (citing <u>Curry v. City of
Syracuse</u>, 316 F.3d 324, 334-35 (2d Cir. 2003); <u>Kent v. Katz</u>, 312
F.3d 568, 576-77 (2d Cir. 2002)).

As we observed in <u>Wesley</u>, it was well established before the
events at issue here[10] that prisoners are entitled to receive food
prepared in accordance with their religious practices. (<u>Id.</u> at 81-
82) (citing, <u>inter alia</u>, <u>Benjamin v. Coughlin</u>, 905 F.2d 571, 579
(2d Cir. 1990)). Moreover, although defendants in <u>Wesley</u> argued
that the law was unsettled because the courts had not addressed the
specific circumstance of washing Halal and non-Halal trays and
kitchen equipment together, we rejected that suggestion. (<u>Id.</u> at
82 (citing, <u>inter alia</u>, <u>Ford v. McGinnis</u>, 352 F.3d 582, 597 (2d
Cir. 2003)). In addition, we noted that the reasonableness of
defendants' purported belief in the legality of the challenged
practice was called into further question in view of the fact that
DOC had a pre-existing and longstanding directive requiring that

---

[10] The claims of Wilson and Wesley overlap in time, and the
pertinent law has not materially changed.

Halal meals be served on disposable trays, plates, and bowls, an edict that plainly reflected the understanding of the Department (including, presumably its Commissioner and Wardens) that Halal trays, utensils, and other kitchen items were required not to come into contact with non-Halal food and equipment that had touched such food. (Id. at 83). Although there may have been fiscal reasons for ultimately ignoring the DOC rule, the remaining defendants make no effort even to suggest that they were unaware of its requirements or ignorant of its purpose.

In sum, immunity cannot be awarded to defendants Horn and Riordan as a matter of law.

### 3. The Defendants' Personal Involvement

Defendants next argue that plaintiff cannot demonstrate their personal involvement in, or responsibility for, the conduct that purportedly violated plaintiff's right to religiously compliant kitchen practices. We again limit our discussion to defendants Horn and Riordan.

Defendants asserted the same argument in the Wesley case on summary judgment, and the court rejected it then. (Wesley R&R at

23

63-76).[11] In the absence of any new facts or altered law, we reach the same result here.[12]

Rather than repeat our discussion in <u>Wesley</u> of the evidence in the record that indicated the involvement of the Rikers wardens and the Commissioner in passing on, and approving, the food-handling practices for Muslim inmates, we refer the reader to pages 70-76 of the <u>Wesley</u> R&R, which summarizes the evidence in some detail. As reflected there, although defendants sought to pin responsibility for the challenged food practices solely on Assistant Commissioner

---

[11] We note that defendants in <u>Wesley</u> had earlier raised the same defense by way of their Rule 12(b)(6) motion, and that challenge to the pleading was also denied. <u>See</u> Wesley 12(b)(6) Decision at *4-*9.

[12] The only point of legal uncertainty referred to in the <u>Wesley</u> R&R was whether the Supreme Court's decision in <u>Iqbal v. Ashcroft</u>, 129 S.Ct. 1937 (2009), had limited the scope of supervisory liability summarized by the Second Circuit in <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995). (<u>See</u> <u>Wesley</u> R&R at 66-70). In <u>Wesley</u>, we nonetheless concluded that even under the narrower standard espoused by defendants, summary judgment must be denied to Horn and Riordan. (<u>Id.</u> at 70-76). We note that the Second Circuit has still not clarified the impact of <u>Iqbal</u> on this issue, though a number of lower courts (but not all) have held that for claims that do not involve an element of intent, <u>Colon</u> should remain in full force. <u>See</u>, <u>e.g.</u>, <u>Inesti v. Hogan</u>, 2013 WL 791540, *12 & n.23 (S.D.N.Y. March 5, 2013)(citing cases); <u>D'Attore v. New York City Dep't of Corr.</u>, 2012 WL 4493977, at * 6-7 (S.D.N.Y. Sept. 27, 2012)(citing cases). In any event, as in <u>Wesley</u>, we need not resolve that question here, since the narrower proposed standard for supervisory liability still precludes summary judgment.

Johnson, her deposition testimony and that of the various wardens and of Commissioner Horn adequately established an evidentiary basis for a trier of fact to reasonably conclude that these individuals shared responsibility for the decisions as to how to handle food distribution and cleaning operations in the Rikers kitchen, following DOC's shift away from its long-standing requirement that Muslim prisoners be served with disposable trays, dishes, and utensils.

In short, as in <u>Wesley</u>, this aspect of defendants' Rule 56 motion should be denied.

### 4. <u>Mootness of the Injunctive and Declaratory Relief Requests</u>

Defendants' penultimate argument is that Wilson's requests for injunctive and declaratory relief should be denied as moot. The mootness argument is premised on the uncontested fact that plaintiff is no longer in City custody. (Defs.' Mem. 22-23). Plaintiff does not dispute this point or quarrel with defendants' insistence that his departure from City custody moots his requests for an injunction or a declaratory judgment. (Pl.'s Pl.'s Mem. 5). Accordingly, we recommend that this aspect of defendants' motion be granted.

5. Preclusion of Compensatory or Punitive Damages

In their last sally, defendants argue that plaintiff is statutorily barred from recovering compensatory damages, because he concededly suffered no physical injury as a result of the alleged constitutional torts, and is barred from recovering punitive damages. (Defs.' Mem. 23-24 (citing 42 U.S.C. § 1997e(e) and Ciraolo v. City of New York, 216 F.3d 236, 242 (2d Cir. 2000)). Plaintiff appears to concede that, just as his claims for injunctive and declaratory relief are moot, he cannot be awarded compensatory damages, but he says that his case is nonetheless triable as he may still be awarded nominal damages. (Pl.'s Mem. 5-6).

There seems to be no question that Wilson has admitted that he did not suffer physical injury from the washing practices of the AMKC kitchen (see Pl.'s Mem. 5), and that § 1997e(e) thus bars recovery of compensatory damages. See Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002). As for the possibility of punitive damages, although plaintiff does not address this question, we note that defendants err in invoking Ciraolo for the proposition that punitive damages may not be recovered. The issue in that case concerned the possible availability of such a remedy against the

City of New York, not against an individual defendant, as would be the case here. See 216 F.3d at 242. That distinction is crucial, since the Supreme Court has long held that punitive damages may not be awarded against a municipality under § 1983. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 270 (1981).[13] Since defendants justify their attack on a possible punitive award based solely on Ciraolo, their effort to exclude this potential remedy should be denied.[14]

Finally, plaintiff is plainly correct in asserting that he may pursue nominal damages, even if he is barred from recovery of compensatory relief. See, e.g., Thompson, 284 F.3d at 418; Abreu v. Nichols, 2011 WL 1044373, *4 (S.D.N.Y. March 22, 2011); accord, e.g., Thomas v. Illinois, 697 F.3d 612, 614 (7th Cir. 2012).

---

[13] The discussion in Ciraolo involved the possible applicability of a very narrow exception to this rule, which the Supreme Court had alluded to in a footnote in City of Newport, 453 U.S. at 267 n.29. See Ciraolo, 216 F.3d at 238-42.

[14] Defendants do not argue that punitive damages are unavailable if the plaintiff cannot recover a compensatory award, nor could they reasonably do so. See, e.g., Payne v. Jones, 696 F.3d 189, 200-02 (2d Cir. 2012) (discussing Lee v. Edwards, 101 F.3d 805,811-13 (2d Cir. 1996) (noting that punitive award may be higher, as a ratio, when only nominal damages are awarded and allowing $75,000.00 punitive award)).

27

CONCLUSION

For the reasons stated, we recommend that defendants' motion for summary judgment be granted except with respect to plaintiff's claims against defendants Horn and Riordan under the Free Exercise Clause and the RLUIPA, based on defendants' alleged practice of washing Halal trays, utensils, and other kitchen equipment together with the equivalent non-Halal items. We further recommend that plaintiff be limited, in terms of potential remedies, to nominal and punitive damages. We observe that those claims that defendants failed to contest in their motion for summary judgment -- specifically, concerning the unavailability of Halal-designated trays and utensils for prisoners returning from court, the allegedly discriminatory targeting of Muslim prisoners for searches when they return from services and classes, and disparate treatment of Muslim prisoners with respect to the facilities made available for congregational worship -- also remain for trial.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. See also Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on

all adversaries, with extra copies to be delivered to the chambers of the Honorable Lewis A. Kaplan, Room 1310, and to the chambers of the undersigned, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 150-55 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986).

Dated: New York, New York
       March 15, 2013

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

29

Copies of the foregoing Report and Recommendation have been mailed today to:

Jonathan Montcalm, Esq.
Stephen Raab, Esq.
Dorsey & Whitney LLP
51 West 52d Street
New York, New York 10019

Kimberly Conway, Esq.
Assistant Corporation Counsel
   for the City of New York
100 Church Street
New York, New York 10007